UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARA S. DIXON,      )<br>        Plaintiff,      )<br>                             )<br>    v.                      )<br>                             )<br>CAROLYN W. COLVIN, Acting      )<br>Commissioner of Social Security,      )<br>        Defendant.      ) | Cause No.: 2:12-cv-464-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tara Dixon on November 9, 2012, and Plaintiff's Social Security Opening Brief [DE 15], filed on April 12, 2013. This case became fully briefed on July 30, 2013. Plaintiff requests that the May 26, 2011 decision of the Administrative Law Judge (ALJ) that she is not disabled under the Social Security Act be reversed or remanded.

**I. Procedural Background**

Plaintiff filed a claim for disability and disability insurance benefits (DIB) under Title II of the Social Security Act on March 16, 2010. She filed a claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act on August 5, 2010. Though both claims allege a disability onset date of December 5, 2006, Plaintiff later changed the onset date to January 22, 2009, the day she was diagnosed with proliferative diabetic retinopathy.

Her claims were denied initially and again on review. She then sought a hearing, which was held before ALJ Edward P. Studzinski on April 4, 2011. The ALJ issued his decision denying benefits on May 26, 2011, making the following findings:

    1. The claimant meets the insured status requirements of the Social

Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 22, 2009, the alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et. seq.*).

3. The claimant has the following severe impairments: carpal tunnel syndrome, degenerative disc disease and diabetes mellitus with neuropathy (20 CFR 404.1520(c) and 416.920(c)).[1]

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.976(a) as the claimant is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for two hours out of an eight hour [sic] work day and sit for six hours out of an eight hour [sic] work day, except: the claimant is limited to sitting for one hour at a time before needing to stand to stretch for two to three minutes; is not able to push/pull objects such as doors or shopping cars; is able to perform fine and gross manipulation frequently but not continuously or forcefully; and has limited ability to feel small objects.

6. The claimant is unable to perform any past relevant work (20 CRF 404.1565 and 416.965).

7. The claimant was born on February 19, 1971 [sic] and was 37 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination for disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

---

[1] The ALJ explained that Plaintiff's diabetic retinopathy, obesity, Hepatites B, and uterine fibroids caused no more than minimal limitation on her ability to work and were thus not severe.

> whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Plaintiff timely sought review with the Appeals Council on July 20, 2011, which declined to review the ALJ's decision on September 19, 2012. The ALJ's decision is thus final. 20 C.F.R. §§ 404.955 and 404.981. Plaintiff then sought Judicial Review on November 9, 2012. The Administrative Record was filed on February 22, 2013.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Factual Background

### A. Vocational Evidence

Plaintiff is a forty-three year old woman with a high school education. She is the mother of three children. Before the alleged onset date, she worked at a Sears department store as a merchandise customer assistant. Her duties included stocking shelves, assisting customers, cleaning fitting rooms, and working the cash register. The job required her to be on her feet about seven hours in an eight-hour day. It had medium lifting demands (thirty pounds occasionally and twenty pounds frequently). At the hearing, the vocational expert (VE) testified that this job is considered semi-

unskilled. She quit her job in December 2006. She has not worked since.

## B. Medical Evidence

Plaintiff has a number of medical issues. She has diabetes with neuropathy affecting her legs, which has worsened between 2008 and 2010. She suffers from retinopathy and extensive ischemia with cuffing of the vasculature in her left eye as well as background diabetic retinopathy in both eyes. She reported to consulting physician Dr. Bautista that she had a history of detached retina in her left eye that was treated with three laser surgeries. She also has bilateral carpal tunnel syndrome that is mild in her left hand and moderate in her dominant right hand. She has had three surgeries for carpal tunnel syndrome on her left hand, the last of which unfortunately resulted in her contracting MRSA at the hospital. She testified before the ALJ that she was afraid to have surgery on her right hand but did not elaborate why. She cannot completely close her left hand, and her fourth finger is particularly weak. She has also been hospitalized for Hepatitis B. She was diagnosed by one psychologist as having moderate anxiety disorder and, by another, as having somewhat severe dysthymic disorder.

She suffers from degenerative disc disease with facet joint arthropathy in her lower back (L4–5 to L5–S1). She has a bulging disc at L5–S1. Plaintiff is also very obese. She is 5 feet 6.25 inches tall and weighs around 274 pounds. Her body mass index (BMI) is 43.75.

At a consultative examination, performed by Dr. Bautista, she did not do range of motion tests for her lower back and both hips, claiming that she was unable to do so because of back pain. Her knee flexion was limited to 80 degrees in her right knee and to 60 degrees inn the left knee. She was unable to dorsiflex her left foot, and left foot plantar flexion was limited to 20 degrees. The doctor noted mild swelling of both ankles without pedal edema.

Wrist dosriflextion was limited to 50 degrees bilaterally. Palmer flexion was limited to 70 degrees on the right and 40 degrees on the left. She complained of pain and tenderness in both wrists. The doctor rated her muscle tone and strength as 5/5 in both upper extremities, 5/5 in the right leg, and 4/5 in the left leg. She had hyperactive bilateral knee reflexes as well as tingling and numbness in her hands and feet.

In answer to follow-up questions, Dr. Bautista noted that Plaintiff had weak grip strength with the left hand (4/5) and could hold less than ten pounds with both hands. He also noted that she could zip, write slowly and sloppily for less than ten minutes, could tie her shoes slowly, and could only lift two pounds with her left hand.

Plaintiff was treated by Dr. Fadi Alzeidan since at least January 21, 2009, for complaints of pain in her back, hands, legs, and feet (along with a variety of other problems). In an April 1, 2011 Medical Source Statement, Dr. Alzeidan limited Plaintiff to ten pounds of lifting, less than two hours of standing or walking in an eight-hour work day, less than six hours sitting in an eight-hour work day, limited pushing and pulling (because of "moderately severe" foot, shoulder, leg, arm, and back pain). He also limited her to occasional climbing, kneeling, crouching, and stooping. He stated that she could never balance or crawl. He explained that reaching, handling, fingering, and feeling were limited but that she could do each frequently. He also noted that, though her hearing and speaking were unlimited, she did have limited vision because of blurred eyesight and floaters in both eyes. He also stated that she was to avoid extreme temperature, noise, vibration, hazards, and fumes.

State agency medical consultant Dr. M. Brill reviewed the record and opined that Plaintiff could occasionally lift/carry up to twenty pounds; could frequently lift/carry up to ten pounds; could stand/walk/sit for about six hours in an eight-hour work day; had unlimited push/pull abilities; could

5

not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; and could occasionally balance, stoop, kneel, crouch, and crawl. He also noted that she was 66.25 inches tall, weighed 273 pounds, and had a BMI of 43.4.

Dr. Kumar Venkat, who treated Plaintiff, noted that Plaintiff had a history of diabetes, obesity, and high cholesterol. He also noted that her abdomen was obese.

At the hearing before the ALJ, Plaintiff testified that she was five feet, seven inches tall and weighed 273 pounds (her usual weight). She testified that she had to stop working at Sears in 2006 after she had her third carpal tunnel surgery and could not find lighter work at her job. She testified that she could stand for about twenty minutes and walk for about fifteen minutes before she would get leg cramps and back pain. She stated that she thought she could lift about ten to fifteen pounds but that she had difficulty grasping because she could not completely close her left hand and experienced cramping, burning, numbness, and tingling in both hands. She testified that she pushed doors and grocery carts with her forearms.

She testified that she took Ibuprofen and Cymbalta for pain and depression, explaining that she was a scared person who was afraid to leave home. She also testified that she did attend events outside the home from time to time, specifically events relating to her children (e.g., awards nights with Boys and Girls Club). She testified that her pain and anxiety kept her in the house and laying down most of the day and that she does her household chores sitting down.

In his decision, the ALJ found that Plaintiff could lift/carry ten pounds occasionally and less than ten pounds frequently, could stand or walk for two hours out of an eight hour work day, and sit for six hours out of an eight hour work day (with the caveat that she must stand and stretch for a few minutes every hour).

The ALJ's RFC rejected most of the findings of Dr. Brill (the non-examining State Physician) and agreed with most of the RFC prepared by Dr. Alzeidan, one of Plaintiff's treating physicians. The ALJ explained that most of Dr. Alzeidan's opinions were consistent with the record but that the limitation to sitting less than six hours of an eight-hour work day were not supported by the record. As the VE testified, a limitation to less than six hours of sitting in an eight-hour work day would preclude full-time work.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,*

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## IV. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

8

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th

Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## V. Analysis

Plaintiff marshals two arguments for why the ALJ's decision that she was not disabled was erroneous. She contends first that the ALJ's credibility determination was flawed and, second, that he failed to properly consider the effects of her obesity on her RFC. The Court considers each of her arguments in turn.

### A. Credibility

Reviewing courts accord a great deal of deference to ALJs on matters of credibility. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009)).

### *1. Daily Activities*

Plaintiff first argues that, in making his credibility determination, the ALJ failed to build a "logical bridge" between Plaintiff's testimony about her day-to-day life and his conclusion that, while "not the equivalent of substantial gainful activity[, Plaintiff's daily activities] do suggest a

greater functional capacity than [she] alleged." (AR 25).

Plaintiff testified at the hearing that she engages in many daily living activities, including cooking, driving her car short distances, shopping, washing dishes, helping her children with their homework, attending awards banquets, and going to parent–teacher conferences. These things may be relevant, and the ALJ is free to consider them in determining credibility of a claimant. *Oakes v. Astrue*, 258 F. App'x 38, 43 (7th Cir. 2007) (citing *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

But the issue here is not whether he was permitted to consider these activities, but whether he gave a sufficient explanation connecting the activities to his determination that Plaintiff has a "greater functional capacity than [she] alleged." (AR 25); *see, e.g.*, *Scott*, 297 F.3d at 595. The Court concludes that the ALJ failed to do so. Plaintiff's testimony is not obviously or self-evidently contradictory to her other statements, and his opinion offers no explanation, merely juxtaposing a summary of Plaintiff's testimony with his own conclusion. Examination of the opinion yields no "clue to what weight [he] gave the testimony" and why. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).The ALJ failed to build the required logical bridge, and remand is thus required.

## 2. Plaintiff's Medical History

Plaintiff's second contention is that the ALJ erred in drawing inferences about Plaintiff's symptoms and functional deficits without first asking and considering explanations for her lack of treatment. Social Security Ruling 96-7p provides that adjudicators may not draw any inferences about an individual's symptoms "from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" or anything else in the record

11

that may "explain infrequent or irregular medical visits or failure to seek treatment." SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

In his decision, the ALJ found "the claimant's historic treatment [did] not indicate that her impairments are disabling." (AR 25). He based this in part on Plaintiff's testimony that she never had surgery for carpal tunnel syndrome on her right hand, had not received treatment for carpal tunnel syndrome since 2006, had not undergone steroid injections, and had never been prescribed wrist splints. Neither the ALJ nor the Commissioner point to any medical records to support the implication that Plaintiff *should* have had these procedures. Nor did the ALJ ask Plaintiff during the hearing why she chose not to pursue them. This runs afoul of the requirements of Ruling 96-7p. Remand is thus required on this point as well.

*3. Lack of Medical Evidence*

Plaintiff also contends that the ALJ wrongly concluded that a lack of medical evidence was sufficient to determine that Plaintiff could sit up to six hours of an eight-hour work day. Plaintiff is correct that "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; *Clifford*, 227 F.3d at 872–73). However, the ALJ *did* cite to more than a lack of medical evidence. For example, he referred to the medication (Ibuprofen) that Plaintiff took for back pain. And though he accorded Dr. Brill's opinion little weight, the ALJ's decision that a six-hour sitting limitation was appropriate is affirmatively supported by Dr. Brill's record review and RFC assessment.[2] Plaintiff's argument accordingly fails. Nevertheless, given the confusion (especially regarding Dr. Brill's assessment), clarification is warranted on remand on this

---

[2] The ALJ's reason for largely disregarding Dr. Brill's opinion was that subsequent medical records suggested that Plaintiff's carpal tunnel syndrome and diabetic neuropathy did not limit Plaintiff "to the extend Dr. Brill supposed." (AR 26). This is a puzzling statement since the ALJ actually found *greater* restrictions in many areas (e.g., lifting and use of hands).

12

point.

## B. Obesity

Plaintiff is very obese, with a BMI around 43. This is "extreme obesity" according to the Social Security Administration. SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (stating that "BMIs greater than or equal to 40" are level III or extreme). The ALJ's discussion of Plaintiff's obesity appears only in step two and is cursory. It states her height, her weight, and her BMI, explaining that she did not allege that her obesity limited her ability to work and that the medical records "do not suggest that her obesity exacerbates her symptoms." (AR 21). The ALJ did not consider what, if any, effect Plaintiff's obesity had on her RFC or pain.

Social Security Ruling 02-1p requires that an ALJ consider obesity as an impairment and the exacerbating effects of a claimant's obesity on her other conditions (even if the obesity is not itself a severe impairment) when arriving at the RFC assessment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Skarbek*, 390 F.3d at 504. Ruling 02-1p provides that, in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6.

Failure to explicitly consider the effects of obesity may be harmless error when the ALJ relies on medical opinions that discussed obesity. *Prochaska,* 454 F.3d at 736; *Skarbeck*, 390 F.3d at 504. But this is irrelevant in this case since it is being remanded on other grounds. On remand, the ALJ must discuss the impact of obesity in making his RFC determination.

## VI. Conclusion

13

For the reasons given above, the Court **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 15], and **REMANDS** the Commissioner of Social Security's final decision for further proceedings consistent with this Opinion and Order.

SO ORDERED this 7th day of March, 2014

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record